IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 14-cv-01534-LTB-MJW

PARKER EXCAVATING, INC., a Colorado corporation,

    Plaintiff,

v.

LAFARGE WEST, INC., a Delaware corporation,
MARTIN MARIETTA MATERIALS, INC., a North Carolina corporation,
FIDELITY AND DEPOSIT COMPANY OF AMERICA, a Maryland corporation,
FIDELITY AND DEPOSIT COMPANY OF AMERICA, a Maryland corporation,
NICK GUERRA,
ALF RANDALL, in his individual capacity, and
ROBERT SCHMIDT, in his individual capacity,

    Defendants.

___

ORDER
___

    This case is before me on Defendants Martin Marietta Materials, Inc. ("Martin Marietta") and Nick Guerra's ("Guerra") (collectively the "Moving Defendants") Motion for Partial Summary Judgment on the First Claim for Relief and Certain Damages Claims [Doc # 83].  After consideration of the motion, all related pleadings, and the case file, I grant the motion in part and deny it in part as set forth below.

**I. Background**

    This background section is based primarily on the Moving Defendants' Motion [Doc # 83], Plaintiff Parker Excavating, Inc.'s ("Parker Excavating") Response [Doc # 134], and the Moving Defendants' Reply [Doc # 146].  In addition, I considered Parker Excavating's Partial Response to Defendants' Motions for Summary Judgment[,] Joint Overview[,] and Response to

Statement of Facts [Doc # 129] despite the fact that this separate filing was unauthorized and often lacks clarity in its attempt to address multiple issues raised in three separate motions for summary judgment, as well as other briefs and exhibits submitted in connection with other pending summary judgment motions to the extent necessary for consistency and completeness.

For purposes of the Moving Defendants' motion, the following facts are undisputed unless otherwise noted:

Defendant Lafarge West, Inc. ("Lafarge") and later Martin Marietta acted as the prime contractor for Pueblo County on a road construction project in Pueblo County, Colorado known as the South McCulloch Boulevard Roadway/Drainage Improvement Project (the "Project"). Guerra was initially an employee of Lafarge but later became an employee of Martin Marietta. Martin Marietta began acting as general contractor for the Project in early December of 2011 pursuant to an asset purchase agreement with Lafarge.

In July of 2011, Parker Excavating and Lafarge executed a construction subcontract (the "Subcontract") for Parker Excavating to perform a specific scope of work on the Project including asphalt milling, excavation, and traffic control. Under the Subcontract, Lafarge agreed to increase the retainage it would hold during the course of the Project in lieu of requiring Parker Excavating to post payment and performance bonds. Parker Excavating had separate agreements with Lafarge for the rental of certain equipment to Lafarge during the Project. Parker Excavating did not have a contract with Pueblo County for its work on the Project.

In the summer of 2011, Greg Parker of Parker Excavating contacted a County Commissioner for Pueblo County and complained about actions by Defendant Alf Randall ("Randall"), an employee of Pueblo County, relating to the Project. Parker purportedly

expressed his belief that these actions were either due to the fact that Parker Excavating was a Native American company or were the result of a previous dispute. The previous dispute referred to by Parker relates to a project known as the William White Project which Randall and Parker Excavating had also both been involved with and which had also resulted in litigation. During the William White Project, Parker asserts that Randall told him that he did not believe in affirmative action.

By letter dated July 13, 2011, Guerra informed Parker that his communications with the County Commissioner "circumvented the proper dispute resolution procedure as outlined in your subcontractor agreement." Guerra directed Parker to sign a letter of apology to both Randall ("Randall") and Defendant Robert Schmidt ("Schmidt"), who was also an employee of Pueblo County at the time, and an acknowledgment of Guerra's July 3, 2011 letter or face termination of the Subcontract. Parker signed the three letters, and there is no reference to discrimination in any of them.

On November 3, 2011, Parker Excavating wrote a letter to Guerra to inform him of "perceived discrimination" on the part of the Pueblo County Public Works Department ("PCPW"). The letter also detailed "difficulties" that Parker Excavating claimed to have experienced on the Project as a result of PCPW's actions or lack thereof.

On December 6, 2011, Randall wrote a letter to Lafarge listing a number of deficiencies in the traffic control work on the Project. Parker Excavating responded by letter dated December 7, 2011 and alleged discrimination by Pueblo County against Parker Excavating.

In a follow up letter dated December 12, 2011, Randall advised Guerra that Parker Excavating, through Parker, had (1) refused to make certain changes; (2) stated that he would

only discuss traffic control matters if his attorney was present; (3) accused County employees of discrimination; and (4) was verbally abusive and belligerent with County employees. In this letter, Randall further stated that Parker's conduct was unacceptable and asked Guerra to "take whatever steps you deem appropriate to assure that this conduct does not continue."

Parker Excavating first learned of Martin Marietta's involvement on the Project when Parker got a call from Guerra telling him that Parker Excavating needed to post a bond. After becoming prime contractor on the Project, Martin Marietta asserts that its policy was to enforce Lafarge's bonding policy to require all subcontractors to post a bond for work greater than a specified dollar amount and to make no exceptions. Parker Excavating asserts, however, that Martin Marietta was to follow all agreements that Lafarge had made regarding bonding requirements including Lafarge's agreement to increase the retainage it would hold during the course of the Project in lieu of requiring Parker Excavating to post payment and performance bonds. The evidence in the record on this issue arguably supports the positions of both parties.

In a letter to Parker Excavating dated December 12, 2011 on Martin Marrietta letterhead but with a Lafarge signature block, Guerra stated that while Parker Excavating's subcontract with Lafarge "allowed supplementing the bond with retention since [Parker Excavating] was unable to bond the [P]roject," Martin Marietta was requiring a bond on all subcontracts in excess of $20,000. In this letter, Guerra further stated that since Parker had verbally told him that Parker Excavating would be unable to bond the remaining value of the Project, Parker Excavating would have to vacate the Project at a time to be determined. The record contains an identical letter from Guerra to Parker Excavating dated December 15, 2011 but with a Martin Marietta signature block.

According to Geurra, the decision to terminate Parker Excavating's Subcontract was made by him, Dave Smith, and Ted Lowder and others based on the fact that Martin Marietta's integration team would not accept the terms of the Subcontract regarding the bond. Parker Excavating did not perform any work on the Project after December 17, 2011 but left behind "eight specialty signs" at the request of Martin Marietta. It is unclear what happened to these signs.

Parker Excavating has a pending claims against the Moving Defendants for retaliation under § 1981 (First Claim for Relief). Parker Excavating also has pending claims against Martin Marietta for breach of the subcontract (Fourth Claim for Relief); breach of equipment rental agreements (Fifth Claim for Relief); unjust enrichment (Sixth Claim for Relief); conversion (Eighth Claim for Relief); civil theft (Ninth Claim for Relief); intentional interference with a contract (Tenth Claim for Relief); and malicious, willful, and wanton breach of contract (Eleventh Claim for Relief).

Parker Excavating seeks to recover consequential damages including (1) damage to its reputation; (2) loss of goodwill; (3) damage to future bonding capacity; (4) the consequences of the wrongfully terminated contract, including unnecessary labor and costs incurred due to the harassment on the Project; (5) lost pay; (6) lost profits; (7) time and expenses of defending Parker Excavating's name and reputation; (8) inconvenience; and (9) other compensatory damages to be proven at trial. Parker Excavating is relying primarily on its damages expert, William Schwartzkopf, to quantify its alleged damages. Parker Excavating also seeks to recover punitive damages.

## II. Standard of Review

The purpose of a summary judgment motion under Rule 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, summary judgment should not enter if,

viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III. Analysis

The Moving Defendants argue that they are entitled to judgment as a matter of law on Parker Excavating's retaliation claim or, alternatively, that there is no evidence to support holding Guerra individually liable on this claim. The Moving Defendants also argue that Parker Excavating cannot recover consequential and punitive damages on its claims as a matter of law. Finally, the Moving Defendants join in Lafarge and Fidelity and Deposit Company of America's ("Fidelity") Motion for Summary Judgment [Doc # 82] with respect to Parker Excavating's claims for civil theft, conversion, and joint and several liability.

As an initial matter, I note that Parker Excavating's response to the motion is often hard to follow in that it lumps together the various claims and theories it has asserted against all of the Defendants in this case. For instance, Parker Excavating's response refers to discrimination even though it has only asserted a retaliation claim against the Moving Defendants and to § 1983 even though there is no claim under this statute against the Moving Defendants who are private actors. It therefore bears emphasis that it is the burden of Parker Excavating, not this Court, to show that there are issues of material fact to be determined at trial.

### A. Retaliation

Parker Excavating's retaliation claim against the Moving Defendants is predicated on § 1981 which provides in pertitent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, ...."

42 U.S.C. § 1981(a).  "[T]he showing required to establish retaliation is identical under § 1981 and Title VII." *Twigg V. Hawker Beechcraft Corp.,* 659 F.3d 987 (10th Cir. 2011) (*quoting Roberts v. Roadway Express, Inc.,* 149 F.3d 1098, 1110 (10th Cir. 1998)).  Thus, a plaintiff alleging retaliation under § 1981 must show that (1) plaintiff engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.  *Argo v. Blue Cross and Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1202 (10th Cir. 2006).

The Moving Defendants first argue that Parker Excavating cannot show that it engaged in protected opposition to discrimination because it did not specifically complain of racial discrimination.  *See Willmore-Cochran v. Wal-Mart Assocates, Inc.,* 919 F. Supp. 2d 1222, 1234 (N.D. Ala. 2013) ("[In order to constitute statutorily protected activity capable of supporting a § 1981 retaliation claim, an employee's complaint must reasonably convey ... [opposition to] discrimination based specifically upon race, versus some other type of discrimination or injustice generally.").  Viewing the record in the light most favorable to Parker Excavating, I conclude that there is at least a triable issue as to whether Parker Excavating engaged in protected activity when it complained to the County Commissioner of discriminatory conduct based either directly on race or on animus from a previous project.  If the details of Parker Excavating's complaint to the County Commissioner were communicated to the Moving Defendants, then Parker Excavating's reference to "discrimination" in its November 3, 2011 and December 7, 2011 letters may also constitute protected opposition to racial discrimination.

The Moving Defendants next argue that Parker Excavating cannot show that it engaged in protected opposition to discrimination because its opposition alleged discrimination by third parties, *i.e.* Pueblo County employees, and not the Moving Defendants. The Moving Defendants cite a few district court cases that lend some support to this argument. *See e.g. Humphrey v. Kan. Dept. of Wildlife, Parks and Tourism,* 2013 WL 4857889 at ** 6-7 (D. Kan. Sept. 10, 2013) (complaint to supervisor that third-party, non-employee made inappropriate comment did not constitute protected opposition to discrimination under Title VII). The fact that none of these cases are directly on point and that Parker Excavating cites no authority to contradict the Moving Defendants' argument demonstrates the novelty of Parker Excavating's theory of the Moving Defendants' liability for retaliation under § 1981 is, and there is little legal precedent to guide my analysis.

The Moving Defendants make a convincing argument that recognizing a § 1981 claim for retaliation under the circumstances of this case could significantly expand a general contractor's liability by making it accountable for misconduct by others over whom the general contractor has no authority or control. Additionally, as previously set forth, authority interpreting Title VII is instructive for claims under § 1981. Under Title VII, the focus is on whether the employee opposed an unlawful employment practice by the employer. *See e.g. Wimmer v. Suffolk Cty. Police Dep't,* 176 F.3d 125, 135 (2d Cir. 1999) (plaintiff's claim of retaliation was not cognizable under Title VII because his opposition was not directed at an unlawful employment practice of his employer); *Silver v. KCA, Inc.,* 586 F.2d 138, 141 (9th Cir. 1978) ("[N]ot every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer..."). By analogy then, I conclude

9

that Parker Excavating's protected opposition must relate to perceived discrimination by the Moving Defendants.

Because Parker Excavating's opposition to discrimination related to alleged wrongful conduct by third parties over whom the Moving Defendants had no authority or control, I conclude that Parker Excavating's cannot satisfy the first element of a prima facie case of retaliation under § 1981. The Moving Defendants are therefore entitled to judgment on this claim as a matter of law, and I need not consider the Moving Defendants' additional arguments regarding causation or Guerra's individual liability under § 1981.

**B. Damages**

The Moving Defendants first argue that Parker Excavating's claims for consequential damages are barred by the terms of the Subcontract which provides as follows:

> The Subcontractor and Contractor waive Claims against each other for consequential damages arising out of or relating to this Subcontract, including to the extent provided in the Prime Contract, damages for principal office expenses and the compensation of personnel stationed there[,] loss of financing[,] loss of business, loss of reputation, loss of bonding capacity, loss or profits not related to the Project or insolvency. To the extent applicable, this mutual waiver applies to consequential damages due to termination by the Contractor or Owner in accordance with this Subcontract or the Prime Contract. ... The provisions of this Article shall also apply to and survive termination of this Subcontract.

*See* Ex. 2 to Motion, Article 18. I agree.

Parker Excavating cites no relevant authority to support the invalidation of its clear and unequivocal waiver of consequential damages relating to the Subcontract and can no longer rely on its retaliation claim against the Moving Defendants to support an award of such damages. Parker Excavating's claims for consequential damages are therefore barred, and I need not address the Moving Defendants' alternative argument that Parker Excavating has no evidence to

support its claim for such damages.

The Moving Defendants also argue that Parker Excavating has no evidence that they acted willfully or maliciously so as to support an award of punitive damages against them. Parker Excavating did not respond to this argument, and I therefore grant the Moving Defendants' request for judgment as a matter of law on Parker Excavating's request for an award of punitive damages.

## C. Parker Excavating's Claims for Civil Theft, Conversion, and Joint and Several Liability

The Moving Defendants joined in Lafarge and Fidelity's summary judgment motions with respect to Parker Excavating's claims for conversion and civil theft and its request for judgment "jointly and severally" against Defendants. Since these issues are not identical as to all Defendants, I will address them separately here to the extent necessary.

### 1. Conversion

Conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Stauffer v. Stegemann,* 165 P.3d 713, 717 (Colo. App. 2006). "Although the act of conversion takes place at the time the converter takes dominion over the property, predicates to a successful claim for conversion are the owner's demand for return of the property, and the controlling party's refusal to return it." *Glenn Arms Associates v. Century Mortg. & Inv. Co.,* 680 P.2d 1315, 1317 (Colo. App. 1984).

Although Martin Marietta's initial possession of Parker Excavating's specialty signs was authorized, it is clear that this is no longer the case, and Parker Excavating effectively demanded the return of its signs through this case. There are therefore triable issues as to whether Martin Marietta continued to exercise control over the specialty signs after Parker Excavating demanded

their return that preclude summary judgment on Parker Excavating's claim for conversion against Martin Marietta.

### 2. Civil Theft

Colorado's civil theft statute provides as follows:

> All property obtained by theft, robbery, or burglary shall be restored to the owner.... The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property.

C.R.S. § 18-4-405. To prevail on a claim for civil theft under Colorado law, a plaintiff must show that (1) defendant knowingly obtained control over his property without authorization and (2) defendant did so with the intent to permanently deprive him of the benefit of the property. *Huffman v. Westmorland Coal Co.,* 205 P.3d 501, 509 (Colo. App. 2009).

Here, the evidence shows that Martin Marietta obtained possession of the specialty signs with Parker Excavating's consent, and Parker Excavating has not represented any evidence to show an intent by Martin Marietta to permanently deprive Parker Excavating of them. Martin Marietta is therefore entitled to summary judgment on Parker Excavating's claim for civil theft.

### 3. Request for Joint and Several Liability

As set forth in my Order on Lafarge and Fidelity's summary judgment motion, the only remaining question on the issue of joint and several liability is whether Parker Excavating can hold Lafarge and Martin Marietta jointly and severally liable on it claims for breach of Parker Excavating's Subcontract or the equipment rental agreements. For the reasons set forth in that Order, I conclude that there is at least a triable issue as to whether Lafarge and Martin Marietta are jointly and severally liable on these claims, and the Moving Defendants' request for summary judgment on this issue is therefore denied.

## IV.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.   Defendants Martin Marietta and Guerra's Motion for Summary Judgment [Doc # 83] is GRANTED IN PART and DENIED in PART;

2.  Parker Excavating's First Claim for Relief for retaliation under § 1981 against Martin Marietta and Guerra is DISMISSED WITH PREJUDICE;

3.  Parker Excavating's Ninth Claim for Relief for civil theft against Martin Marietta is DISMISSED WITH PREJUDICE; and

4.  Parker Excavating may not recover consequential or punitive damages on its remaining claims against Martin Marietta.

Dated: May   3  , 2016 in Denver, Colorado.

                                        BY THE COURT:

                                          s/Lewis T. Babcock
                                        LEWIS T. BABCOCK, JUDGE