IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 14-cv-01534-LTB-MJW

PARKER EXCAVATING, INC., a Colorado corporation,

    Plaintiff,

v.

LAFARGE WEST, INC., a Delaware corporation,
MARTIN MARIETTA MATERIALS, INC., a North Carolina corporation,
FIDELITY AND DEPOSIT COMPANY OF AMERICA, a Maryland corporation,
NICK GUERRA,
ALF RANDALL, in his individual capacity, and
ROBERT SCHMIDT, in his individual capacity,

    Defendants.

___

ORDER
___

    This case is before me on Defendants Lafarge West, Inc. ("Lafarge") and Fidelity and Deposit Company of America's ("Fidelity") (collectively the "Moving Defendants") Motion for Partial Summary Judgment [Doc # 82]. After consideration of the motion, all related pleadings, and the case file, I grant the motion in part and deny it in part as set forth below.

**I. Background**

    This background section is based primarily on the Moving Defendants' Motion [Doc # 82], Plaintiff Parker Excavating, Inc.'s ("Parker Excavating") Response [Doc # 136], and the Moving Defendants' Reply [Doc # 146]. In addition, I considered Parker Excavating's Partial Response to Defendants' Motions for Summary Judgment[,] Joint Overview[,] and Response to Statement of Facts [Doc # 129] despite the fact that this separate filing was unauthorized and

lacks clarity in its attempt to address multiple issues raised in three separate motions for summary judgment, as well as other briefs and exhibits submitted in connection with other pending summary judgment motions to the extent necessary for consistency and completeness.

For purposes of the Moving Defendants' motion, the following facts are undisputed unless otherwise noted:

Lafarge was the prime contractor for Pueblo County on a road construction project in Pueblo County, Colorado known as the South McCulloch Boulevard Roadway/Drainage Improvement Project (the "Project") until early December of 2011. At that time, Defendant Martin Marietta Materials, Inc. ("Martin Marietta") took over the role of prime contractor pursuant to an asset exchange agreement it entered into with Lafarge. Defendant Nick Guerra ("Guerra") was initially an employee of Lafarge but later became an employee of Martin Marietta.

Parker Excavating was a subcontractor on the Project and also supplied certain equipment to Lafarge and Martin Marietta for use on the Project. Under Parker Excavating's subcontract, Lafarge agreed to increase the retainage it would hold during the course of the Project in lieu of requiring Parker Excavating to post a bond.

In the summer of 2011, Greg Parker of Parker Excavating contacted a County Commissioner for Pueblo County and complained about actions by Defendant Alf Randall ("Randall"), an employee of Pueblo County, relating to the Project. Parker purportedly expressed his belief that these actions were either due to the fact that Parker Excavating was a Native American company or were the result of a previous dispute. The previous dispute referred to by Parker relates to a project known as the William White Project which Randall and

Parker Excavating had also both been involved with and which had also resulted in litigation. During the William White Project, Parker asserts that Randall told him that he did not believe in affirmative action.

By letter dated July 13, 2011, Guerra informed Parker that his communications with the County Commissioner "circumvented the proper dispute resolution procedure as outlined in your subcontractor agreement." Guerra directed Parker to sign a letter of apology to both Randall and Defendant Robert Schmidt ("Schmidt"), who was also an employee of Pueblo County at the time, and an acknowledgment of Guerra's July 3, 2011 letter or face termination of the Subcontract. Parker signed the three letters.

On November 3, 2011, Parker Excavating wrote a letter to Defendant Nick Guerra ("Guerra") to inform him of "perceived discrimination" on the part of the Pueblo County Public Works Department ("PCPW"). The letter also detailed "difficulties" that Parker Excavating claimed to have experienced on the Project as a result of PCPW's actions or lack thereof.

On December 6, 2011, Randall wrote a letter to Lafarge listing a number of deficiencies in the traffic control work on the Project. On December 7, 2011, Parker Excavating responded to Randall's letter and alleged discrimination by Pueblo County against Parker Excavating.

Parker Excavating first learned of Martin Marietta's involvement on the Project when Parker got a call from Guerra telling him that Parker Excavating needed to post a bond. After becoming prime contractor on the Project, Martin Marietta asserts that its policy was to enforce Lafarge's bonding policy which was to require all subcontractors to post a bond for work greater than a specified dollar amount and to make no exceptions. Parker Excavating asserts, however, that Martin Marietta was to follow all agreements that Lafarge had made regarding bonding

requirements including Lafarge's agreement to increase the retainage it would hold during the course of the Project in lieu of requiring Parker Excavating to post payment and performance bonds. The evidence in the record on this issue arguably supports the positions of both parties.

In a letter to Parker Excavating dated December 12, 2011 on Martin Marrietta letterhead but with a Lafarge signature block, Guerra stated that while Parker Excavating's subcontract with Lafarge "allowed supplementing the bond with retention since [Parker Excavating] was unable to bond the [P]roject," Martin Marietta was requiring a bond on all subcontracts in excess of $20,000. In this letter, Guerra further stated that since Parker had verbally told him that Parker Excavating would be unable to bond the remaining value of the Project, Parker Excavating would have to vacate the Project at a time to be determined. The record contains an identical letter from Guerra to Parker Excavating dated December 15, 2011 but with a Martin Marietta signature block.

Although Lafarge may have still been involved with the Project to some degree, the evidence establishes that Martin Marietta terminated Parker Excavating from the Project on December 17, 2011. According to Geurra, the decision to terminate Parker Excavating's Subcontract was made by him, Dave Smith, and Ted Lowder and others based on the fact that Martin Marietta's integration team would not accept the terms of the Subcontract regarding the bond. Parker Excavating did not perform any work on the Project after December 17, 2011 but left "eight specialty signs" at the Project at the request of Martin Marietta. It is unclear what happened to these signs.

Parker Excavating has pending claims against Lafarge for retaliation under § 1981 (First Claim for Relief); breach of the subcontract (Fourth Claim for Relief); breach of equipment

4

rental agreements (Fifth Claim for Relief); unjust enrichment (Sixth Claim for Relief); conversion (Eighth Claim for Relief); civil theft (Ninth Claim for Relief); and malicious, willful, and wanton breach of contract (Eleventh Claim for Relief). Parker Excavating also has a claim against Lafarge and Fidelity on the bond Fidelity issued for the Project.

Parker Excavating seeks to recover consequential damages including (1) damage to its reputation; (2) loss of goodwill; (3) damage to future bonding capacity; (4) the consequences of the wrongfully terminated contract, including unnecessary labor and costs incurred due to the harassment on the Project; (5) lost pay; (6) lost profits; (7) time and expenses of defending Parker Excavating's name and reputation; (8) inconvenience; and (9) other compensatory damages to be proven at trial. Parker Excavating is relying primarily on its damages expert, William Schwartzkopf, to quantify its alleged damages. Parker Excavating also seeks to recover punitive damages.

## II. Standard of Review

The purpose of a summary judgment motion under Rule 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial.  *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).  Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.  *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial.  *Celotex*, 477 U.S. at 323.  The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party.  *Anderson*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III.  Analysis

The Moving Defendants argue that they are entitled to judgment as a matter of law on Parker Excavating's claims for retaliation, conversion, and civil theft.  The Moving Defendants also argue that they are entitled to judgment as a matter of law on Parker Excavating's request for joint and several liability and damages resulting from Parker Excavating's termination for the Project.  Finally, the Moving Defendants join in Defendants Martin Marietta and Guerra's Motion for Partial Summary Judgment [Doc # 83] with respect to Parker Excavating's request

for an award of consequential and punitive damages.

**A.  Retaliation Claim**

There is some overlap between the issues raised in the present summary judgment motion and in that filed by Martin Marietta and Guerra.  *See* Doc # 83.  In fact, Parker Excavating incorporated its response to Martin Marietta and Guerra's motion regarding its retaliation claim into its response to the motion currently before me.  I therefore again note that Parker Excavating's response to Martin Marietta and Guerra's motion is often hard to follow in that it lumps together the various claims and theories it has asserted against all of the Defendants in this case and that it is the burden of Parker Excavating, not this Court, to show that there are issues of material fact to be determined at trial.  With these considerations in mind, I turn to the merits of the Moving Defendants' argument that they are entitled to judgment as a matter of law on Parker Excavating's retaliation claim.

Parker Excavating's retaliation claim against the Moving Defendants is predicated on § 1981 which provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, ...." 42 U.S.C. § 1981(a).  "[T]he showing required to establish retaliation is identical under § 1981 and Title VII." *Twigg V. Hawker Beechcraft Corp.,* 659 F.3d 987 (10th Cir. 2011) (*quoting Roberts v. Roadway Express, Inc.,* 149 F.3d 1098, 1110 (10th Cir. 1998)).  Thus, a plaintiff alleging retaliation under § 1981 must show that (1) plaintiff engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.  *Argo v. Blue Cross and Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1202 (10th Cir.

2006).

The Moving Defendants first argue that Parker Excavating cannot show that it engaged in protected opposition to discrimination because it did not specifically complain of racial discrimination. *See Willmore-Cochran v. Wal-Mart Assocates, Inc.,* 919 F. Supp. 2d 1222, 1234 (N.D. Ala. 2013) ("[In order to constitute statutorily protected activity capable of supporting a § 1981 retaliation claim, an employee's complaint must reasonably convey ... [opposition to] discrimination based specifically upon race, versus some other type of discrimination or injustice generally."). As I likewise concluded in my Order on Martin Marietta and Guerra's summary judgment motion, viewing the record in the light most favorable to Parker Excavating, there is at least a triable issue as to whether Parker Excavating engaged in protected activity when it complained to the County Commissioner of discriminatory conduct based either directly on race or on animus from a previous project. If the details of Parker Excavating's complaint to the County Commissioner were communicated to the Moving Defendants, then Parker Excavating's reference to "discrimination" in its November 3, 2011 and December 7, 2011 letters may also constitute protected opposition to racial discrimination.

The Moving Defendants next argue that Parker Excavating cannot show that Lafarge took any adverse employment action against Parker Excavating. I agree. Parker Excavating's identifies the following as "adverse employment actions:" (1) requirement that Parker Excavating provide a qualification statement when it bid for the Project; (2) previous animus from the Walter White Project carried over; (3) Randall's rejection of Parker Excavating's work for unreasonable reasons; (4) "unreasonable demands and safety issues continued;" (5) required letters of apology after Parker complained to the County Commissioner; (6) Randall's December

6, 2011 letter listing deficiencies; and (7) refusals to sell asphalt and award work. See Doc # 134, pp. 14-26.

A number of these purportedly adverse actions can be summarily rejected on the basis that they were not taken by, or did not involve, Lafarge. This category would include Randall's animus stemming from the Walter White Project; Randall's rejection of Parker Excavating's work for unreasonable reasons; Randall's letter dated December 6, 2011; and the alleged refusal to sell asphalt since the deposition testimony cited in support refers only to Martin Marietta. Likewise, though not specifically listed in its response, Parker Excavating's subcontract was terminated by Martin Marietta, and the termination of its subcontract therefore cannot constitute an adverse employment action by Lafarge. In addition, the qualifications statement required from Parker Excavating cannot be retaliatory because it preceded any complaints of discrimination, and Parker Excavating presents no evidence that it bid for work with Lafarge that it was not awarded under questionable circumstances.

The only remaining purported adverse actions consist of alleged "unreasonable demands and safety issues continued" and the required apology letters. Parker Excavating identifies the alleged "unreasonable demands and safety issues continued" as follows:

> The County and the prime contractor first Lafarge and then Martin Marietta kept requiring Parker to change placement of signs one way, and then a short time later, move them a short distance or back to where they were before.

Doc # 134, p. 19. In support of this assertion, Parker Excavating cites Parker's deposition testimony in response to questioning concerning alleged discriminatory acts by Randall. In any event, although the phrase "adverse employment action" is liberally defined in the Tenth Circuit, it does not include "a mere inconvenience or an alteration of job responsibilities." *Sanchez v.*

*Denver Pub. Schools,* 164 F.3d 527, 532 (10th Cir. 1998). I therefore conclude that Parker Excavating's allegation regarding the movement of signs does not establish an adverse action by Lafarge. Likewise, while Parker Excavating may have thought the letters of apology were unwarranted, this requirement did not constitute an adverse employment action particularly in light of the fact that Parker Excavating cites no evidence to refute the statement in these letters that its actions in contacting the County Commissioner circumvented the dispute resolution procedure in its subcontract.

Since Parker Excavating is unable to establish that Lafarge took adverse action against it, Lafarge is entitled to summary judgment in its favor on Parker Excavating's § 1981 retaliation claim, and I need not consider Lafarge's additional argument that Parker Excavating is also unable to prove the causal connection element of this claim.

## B.  Conversion and Civil Theft Claims

The Moving Defendants argue that Parker Excavating's claims for civil theft and conversion claims fail as a matter of law because Parker Excavating voluntarily left the eight specialty signs that form the basis of these claims at the Project at Martin Marietta's request. I agree that these claims fail as to Lafarge.

### 1.  Conversion

Conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Stauffer v. Stegemann,* 165 P.3d 713, 717 (Colo. App. 2006). "Although the act of conversion takes place at the time the converter takes dominion over the property, predicates to a successful claim for conversion are the owner's demand for return of the property, and the controlling party's refusal to return it." *Glenn Arms*

*Associates v. Century Mortg. & Inv. Co.,* 680 P.2d 1315, 1317 (Colo. App. 1984).

Parker Excavating has not presented any evidence that Lafarge, whose involvement on the Project was minimal at the time that Martin Marietta requested that Parker Excavating leave the specialty signs, ever exercised dominion or control over them. Lafarge is therefore entitled to the entry of judgment in its favor on Parker Excavating's conversion claim.

### 2. Civil Theft

Colorado's civil theft statute provides as follows:

> All property obtained by theft, robbery, or burglary shall be restored to the owner.... The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property.

C.R.S. § 18-4-405. To prevail on a claim for civil theft under Colorado law, a plaintiff must show that (1) defendant knowingly obtained control over his property without authorization and (2) defendant did so with the intent to permanently deprive him of the benefit of the property. *Huffman v. Westmorland Coal Co.,* 205 P.3d 501, 509 (Colo. App. 2009).

Again, Parker Excavating has not presented any evidence that Lafarge ever exercised dominion or control over its specialty signs, and Lafarge is therefore entitled to the entry of judgment in its favor on Parker Excavating's civil theft claim.

### C. Request for Joint and Several Liability

The Moving Defendants argue that Parker Excavating's request for judgment "jointly and severally" against Defendants is without merit. Since I have concluded that all Defendants are entitled to summary judgment on Parker Excavating's claims for retaliation and discrimination, the issue of joint and several liability on these claims is moot. Per the preceding section of this Order, the issue of joint and several liability on Parker Excavating's claims for conversion and

civil theft is also moot. The only question then is whether Parker Excavating can hold Lafarge and Martin Marietta jointly and severally liable on it claims for breach of Parker Excavating's subcontract or the equipment rental agreements.

The Colorado Court of Appeals has recognized that "[a]n assignment does not relieve the assignor from liability under the contract." *Roget v. Grand Pontiac, Inc.,* 5 P.3d 341, 345 (Colo. App. 1999). "Rather, after the assignment, the assignee becomes primarily liable for the obligations under the contract, while the assignor remains secondarily liable." *Id.* "The debtor may then sue the assignor, the assignee, of both." *Id.*

The parties have provided little evidence regarding Lafarge's assignment of its subcontract with Parker Excavating to Martin Marietta or the equipment rental agreements. Such evidence could impact the parties' respective liability under these contracts. *See* 6A C.J.S. *Assignments* § 121 (April 2016 Update) (provisions of contract, consent of other contracting party, or novation of the contract may relieve assignor of liability under the contract). Based on the evidence currently before me and the legal principles set forth above then, I conclude that there is at least a triable issue as to whether Lafarge and Martin Marietta are jointly and severally liable to Parker Excavating on its claims for breach of the subcontract and the equipment rental agreements.

**D.  Request for Termination and Consequential Damages**

The analysis set forth above also defeats the Moving Defendants' argument that they cannot be liable for any damages that Parker Excavating incurred after Martin Marietta took over as prime contractor on the Project as a matter of law. However, the Moving Defendants also joined in Martin Marietta and Guerra's summary judgment motion wherein they argued that they

were entitled to judgment as a matter of law on Parker Excavating's claims for consequential and punitive damages on other grounds. I granted this motion for the reasons set forth in the Order on that motion, and it follows that Parker Excavating is likewise barred from recovering consequential and punitive damages from the Moving Defendants.

## IV.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Defendants Lafarge and Fidelity's Motion for Summary Judgment [Doc # 82] is GRANTED IN PART and DENIED IN PART;

2. Parker Excavating's First Claim for Relief for retaliation under § 1981 against Lafarge is DISMISSED WITH PREJUDICE;

3. Parker Excavating's Eighth Claim for Relief for conversion against Lafarge is DISMISSED WITH PREJUDICE;

4. Parker Excavating's Ninth Claim for Relief for civil theft against Lafarge is DISMISSED WITH PREJUDICE; and

5. Parker Excavating may not recover consequential or punitive damages on its remaining claims against Lafarge or on its bond claim against Fidelity.

Dated: May __3__, 2016 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE