IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 14-cv-01534-LTB-MJW

Parker Excavating, INC., a Colorado corporation,

    Plaintiff,

v.

LAFARGE WEST, INC., a Delaware corporation,
MARTIN MARIETTA MATERIALS, INC., a North Carolina corporation,
FIDELITY AND DEPOSIT COMPANY OF AMERICA, a Maryland corporation,
FIDELITY AND DEPOSIT COMPANY OF AMERICA, a Maryland corporation,
NICK GUERRA,
ALF RANDALL, in his individual capacity, and
ROBERT SCHMIDT, in his individual capacity,

    Defendants.

_____

ORDER
_____

    This case is before me on Defendants Alf Randall ("Randall") and Robert Schmidt's ("Schmidt") (collectively the "County Defendants") Motion for Summary Judgment [Doc # 79]. After consideration of the motion, all related pleadings, and the case file, I grant the County Defendants' motion.

**I. Background**

    This background section is based primarily on the County Defendants' Brief in Support of Motion for Summary Judgment [Doc # 80], Plaintiff Parker Excavating, Inc.'s ("Parker Excavating") Response [Doc # 135], and the County Defendants' Reply [ Doc # 144]. In addition, I considered Parker Excavating's Partial Response to Defendants' Motions for

Summary Judgment[,] Joint Overview[,] and Response to Statement of Facts [Doc # 129] despite the fact that this separate filing was unauthorized and often lacks clarity in its attempt to address multiple issues raised in three separate motions for summary judgment, as well as other briefs and exhibits submitted in connection with other pending summary judgment motions to the extent necessary for consistency and completeness.

For purposes of the County Defendants' Motion for Summary Judgment, the following facts are undisputed unless otherwise noted:

Parker Excavating was a subcontractor for Defendant Lafarge West, Inc. ("Lafarge") and later Defendant Martin Marietta, Inc. ("Martin Marietta") which each served as the prime contractor during portions of a road construction project in Pueblo County, Colorado known as the South McCulloch Boulevard Roadway/Drainage Improvement Project (the "Project"). Randall is an employee of Pueblo County who served first as the Acting Director of the Pueblo County Public Works Department ("PCPW") and later as PCPW's Senior Engineer during the course of the Project. Randall was responsible for supervising the engineering staff and the technical designs and details for the Project. Schmidt, a former PCPW employee, replaced Randall as PCPW's Director in the early stages of the Project.

On or about June 8, 2011, Greg Parker ("Parker"), an officer of Parker Excavating, met with Defendant Nick Guerra ("Guerra"), a representative of Lafarge, and reached an oral agreement for Parker Excavating to perform traffic control and rotomilling work on the Project as a subcontractor of Lafarge. On or about July 22, 2011, Parker Excavating and Lafarge executed a written contract to memorialize their oral agreement. Parker worked on the Project as a certified Traffic Control Supervisor ("TCS") for Parker Excavating.

Traffic control for the area of the Project controlled by Pueblo County was guided by the "Manual of Uniform Traffic Control Devices" ("MUTCD"), a set of guidelines concerning traffic control equipment and procedures for the use of that equipment. There are, however, different ways to handle traffic control and to interpret the MUTCD. At a meeting prior to the commencement of construction, the parties working on the Project were informed that two-way traffic was to remain flowing on McCulloch Boulevard and that access to local businesses was to be maintained. At this same meeting, Parker had his only communication with Randall. According to Parker, Randall wadded up the Method for Handling Traffic ("MHT") Parker had with him, said it was "bullshit," and threw it in the trash.

Once work began on the Project, Keith Smith, a certified TCS who served as Traffic Engineer for the Project, asserts that it was a "continuous effort" to keep Parker Excavating in line on traffic control for the Project and that there were instances when Parker Excavating's plans for traffic control did not conform to the MUTCD. Asked to describe Parker Excavating's work on the Project in one word, Mark Pierson, the Senior Project Manager for Pueblo County, selected the word "lacking" and elaborated that the MHTs submitted by Parker Excavating "continually" required changes.

In the summer of 2011, Parker contacted a County Commissioner for Pueblo County and complained about actions by Randall relating to the Project. Parker also purportedly expressed his belief that these actions were either due to the fact that Parker Excavating was a Native American company or were the result of a previous dispute. The previous dispute referred to by Parker relates to a project known as the William White Project which Randall and Parker Excavating had also both been involved with and which had also resulted in litigation. During

the William White Project, Parker asserts that Randall told him that he did not believe in affirmative action.

The County Commissioner contacted Schmidt regarding Parker's complaints but, according to Schmidt, did not raise the issue of discrimination. Schmidt considered Parker's contact with the County Commissioner to be a breach of protocol because any subcontractor complaints were to be reported to the general contractor. Schmidt met with Guerra about the matter and requested written acknowledgment that there had been a breach of protocol and an assurance that it would not happen again.

By letter dated July 13, 2011, Guerra informed Parker that his communications with the County Commissioner "circumvented the proper dispute resolution procedure as outlined in your subcontractor agreement." Guerra directed Parker to sign a letter of apology to each of the County Defendants and an acknowledgment of his letter or face termination of Parker Excavating's subcontractor agreement. Parker signed the three letters, and there is no reference to discrimination in any of them.

In October or November of 2011, Schmidt confronted Parker at a meeting and accused him of not properly inspecting Parker Excavating's work on the Project. Schmidt cursed at Parker and called him a "fucking liar." At another meeting that occurred in December of 2011, Schmidt poked Parker in the chest while screaming at him and calling him names like "stupid." Dave Smith of Lafarge/Martin Marietta intervened at the December meeting to prevent further physical contact between the two men.

On November 3, 2011, Parker Excavating wrote a letter to Lafarge explaining some of the problems it had with maintaining traffic control for the Project. Parker Excavating referred

to "perceived discrimination" on the part of PCPW and stated that PCPW indicated it would reject any MHTs that did not conform to drawings disseminated for bidding. Parker Excavating asserted that these original drawings did not comply with the MUTCD or industry standards.

On December 6, 2011, Randall wrote a letter to Lafarge listing a number of deficiencies in the traffic control work on the Project as noted by Keith Smith and communicated to Randall by Mark Pierson. Parker Excavating responded by letter dated December 7, 2011and alleged discrimination by Pueblo County against Parker Excavating.

In a letter dated December 12, 2011, Randall advised Guerra that Parker Excavating, through Parker, had (1) refused to make certain changes; (2) stated that he would only discuss traffic control matters if his attorney was present; (3) accused County employees of discrimination; and (4) was verbally abusive and belligerent with County employees. In this letter, Randall further stated that Parker's conduct was unacceptable and asked Guerra to "take whatever steps you deem appropriate to assure that this conduct does not continue."

In a letter to Parker Excavating dated December 12, 2011 on Martin Marrietta letterhead but with a Lafarge signature block, Guerra stated that while Parker Excavating's subcontract with Lafarge "allowed supplementing the bond with retention since [Parker Excavating] was unable to bond the [P]roject," Martin Marietta was requiring a bond on all subcontracts in excess of $20,000. In this letter, Guerra further stated that since Parker had verbally told him that Parker Excavating would be unable to bond the remaining value of the Project, Parker Excavating would have to vacate the Project at a time to be determined. The record contains an identical letter from Guerra to Parker Excavating dated December 15, 2011 but with a Martin Marrietta signature block.

On December 17, 2011, Martin Marietta terminated Parker Excavating's subcontract for work on the Project and then removed Parker Excavating's equipment from the job site.

Parker Excavating has pending claims against Randall in his individual capacity for discrimination under 42 U.S.C. § 1981 and under § 1981 through § 1983 (Second Claim for Relief) and a pending claim against the County Defendants for retaliation under 42 U.S.C. §1981 through § 1983 (Third Claim for Relief). Though Parker Excavating continues to assert that it has a claim against the County Defendants for retaliation under § 1981, *see* Doc # 99, p. 3, this claim was dismissed by Order dated January 8, 2015 for failure to state a claim upon which relief may be granted because the County Defendants' alleged wrongful conduct was undertaken in their capacity as PCPW employees. *See* Doc # 62. This same analysis is applicable to Parker Excavating's § 1981 discrimination claim against Randall but the County Defendants have not sought dismissal of this claim on this basis. In any event, the County Defendants argue that they are entitled to summary judgment on all of Parker Excavating's remaining claims against them.

## II. Standard of Review

The purpose of a summary judgment motion under Rule 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex*, 477 U.S. at 323. The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson*, 477 U.S. at 252; *Mares*, 971 F.2d at 494.

### III.  Analysis

The County Defendants argue that they are entitled to qualified immunity on Parker Excavating's discrimination and retaliation claims. Alternatively, the County Defendants argue that Parker Excavating cannot make out a prima facie case of retaliation and is barred from asserting claims against them based on Parker Excavating's prior dismissal of Pueblo County

from a predecessor lawsuit relating to the Project.  The County Defendants also adopt the arguments made by Defendants Martin Marietta and Guerra in their summary judgment motion regarding the damages that Parker Excavating seeks to recover.

## A.  Qualified Immunity

The doctrine of qualified immunity shields governmental officials performing discretionary functions from liability for civil damages provided that their conduct does not violate clearly established constitutional rights.  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  As an initial matter, I reject Parker Excavating's argument that the County Defendants are not entitled to qualified immunity because they have been sued in their individual capacities for actions that are not part of their administrative duties.  First, "[a] qualified immunity defense is only available to parties sued in their individual capacity."  *Beedle v. Wilson,* 422 F.3d 1059, 1069 (10th Cir. 2005).   In addition, there are no facts to support a finding that the County Defendants were acting outside the scope of their employment with PCPW in their dealings with Parker Excavating in connection with the Project.  *See* Amended Complaint, ¶¶ 111 & 119 (alleging that the County Defendants were state actors acting under color of governmental authority during times relevant to the Amended Complaint).

Since the County Defendants are entitled to assert the defense of qualified immunity, Parker Excavating must meet a "heavy burden" and demonstrate that (1) the County Defendants violated one of Parker Excavating's constitutional or statutory rights; and (2) the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable person in the County Defendants' position would have known that their conduct violated the law.  *Maritnez v. Carr,* 479 F.3d 1292, 1294-5  (10th Cir. 2007).

Parker Excavating argues that the County Defendants violated its right to make and enforce contracts under § 1981. The term "make and enforce contracts" under § 1981 is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions, of the contractual relationship." 42 U.S.C. § 1981(b). Discrimination under § 1981 requires intent by the defendant to discriminate on the basis of race and interference with a protected activity as defined in the statute. *Hampton v. Dillard Dept. Stores,* 247 F.3d 1091, 1101-02 (10th Cir. 2001). Retaliation under § 1981 requires an adverse action and a causal connection between protected activity and the adverse action. *Davis v. Unified School Dist. 500,* 750 F.3d 1168, 1170 (10th Cir. 2014). In addition, Parker Excavating must show that the County Defendants' conduct violated its rights under § 1981; it is not enough for Parker Excavating to show that its rights under § 1981 were violated in the abstract. *Dodds v. Richardson,* 614 F.3d 1185, 1194 (10th Cir. 2010) ("In conducting qualified immunity analysis ..., courts must consider whether each defendant's alleged conduct violated the plaintiff's clearly established rights.").

As best as I am able to discern, Parker Excavating is alleging that Randall discriminated and retaliated against it in violation of § 1981 by (1) "presumably" requesting a letter of apology after Parker called the County Commissioner to complain about unfair treatment, *see* Response, p. 4; (2) requiring a qualifications statement from Parker Excavating and no other companies bidding on the Project despite the fact that Parker Excavating was pre-qualified to bid for the work, *see* Ex. I to Motion, pp. 246 - 252; (3) wadding up an MHT prepared by Parker, saying it was "bullshit," and throwing it in the trash, *id.*; (4) purportedly requiring daily changes to its work as communicated by people from Lafarge and other County employees, *id.;* and (5) not

allowing Parker to attend Project meetings as communicated to Parker by Guerra, *id.*

Parker Excavating cites no authority to support its argument that Randall, who is neither a party nor a representative of a party to Parker Excavating's subcontract, violates its rights under § 1981 by engaging in the type of conduct alleged here.  First of all, none of Randall's alleged actions prevented Parker Excavating from entering into a subcontract to work on the Project, and there is no evidence that Randall was responsible for the termination of Parker Excavating's subcontract.  The question then is whether any of Randall's alleged actions improperly interfered with the parties' performance under Parker Excavating's subcontract so as constitute a violation of  § 1981.

If Randall was responsible for Parker Excavating having to make daily changes to its work, then he arguably interfered with its performance under its subcontract.  However, the only evidence to show that Randall was responsible for such changes are alleged hearsay statements from other people.  Likewise, Randall arguably interfered with Parker Excavating's performance under its subcontract if he precluded Parker from attending Project meetings on behalf of Parker Excavating.  Again, however, the evidence that Randall was responsible for precluding Parker is an alleged statement from Guerra to this effect.  Moreover, even if it could be proven that Randall took these actions, I conclude that they are not substantial or adverse enough to constitute a violation of Parker Excavating's § 1981 to be free from contractual interference due to racial discrimination or retaliation.  *See Sanchez v. Denver Pub. Schools,* 164 F.3d 527, 532 (10th Cir. 1998) (although the phrase "adverse employment action" is liberally defined in the Tenth Circuit for Title VII retaliation claims, it does not include "a mere inconvenience or an alteration of job responsibilities").

Parker Excavating's remaining allegations of discriminatory and retaliatory conduct on the part of Randall consist of his alleged role in requiring Parker to write letters of apology after he complained to the County Commissioner and his actions in rejecting an MHT prepared by Parker during the one and only direct communication Parker had with him. With respect to the latter, I conclude that this one incident which is not indicative of a pattern of conduct by Randall does not constitute unlawful discrimination or retaliation under § 1981. I likewise conclude that Randall's alleged role in requiring the apology letters does not constitute unlawful discrimination or retaliation under § 1981. While Parker Excavating may have thought these letters were unwarranted, it does not present any evidence to refute the statements in them that Parker's conduct in contacting the County Commissioner circumvented the proper dispute resolution process under its subcontract or to show that the letters impacted the parties' performance under Parker Excavating's subcontract.

In addition, with respect to Parker Excavating's discrimination claim, Parker Excavating cannot prove that Randall intended to discriminate against it on the basis of race. *See Hampton, supra* (listing such intent as element of § 1981 discrimination case). The only evidence presented by Parker Excavating that even suggests such intent consists of Randall's purported comment that he did not believe in affirmative action and his requirement that only Parker Excavating submit a qualifications statement to bid on the Project. Randall's statement about affirmative action, however, fails to demonstrate general animus towards racial minorities let alone Native Americans, and Parker Excavating has failed to provide any evidence to show that other non-minority companies bidding on the Project were not required to submit a qualifications statement.

Consistent with the foregoing then, I conclude that Parker Excavating has failed to meet its heavy burden of establishing that Randall's actions violated Parker Excavating's right to make and enforce contracts under § 1981.

As to whether Parker Excavating can prove that Schmidt's actions violated its rights under § 1981, it appears that Parker Excavating is alleging that Schmidt retaliated against it by (1) requesting a letter of apology after Parker called the County Commissioner to complain about unfair treatment, *see* Response, p. 4; (2) writing a letter of deficiencies the same day that Parker complained about discrimination and unfair treatment, *id.* at p. 3 (3) "saying he was standing behind whatever Randall did no matter what" at the beginning of the Project, *see* Ex. I to Motion, pp. 239-246; (4) calling him a "fucking liar" at one meeting and then poking him in the chest while screaming at him and calling him names like "stupid" at another meeting, *id.;* and (5) making "a few snide comments" about Parker Excavating's work on the Project, *id.* Again, under the facts before me, the question is whether any of Schmidt's alleged actions improperly interfered with the parties' performance under Parker Excavating's subcontract so as constitute a violation of § 1981.

Since Parker Excavating's sole claim against Schmidt is for retaliation in violation of § 1981, the first question is whether the above alleged actions occurred after Parker Excavating arguably complained of racial discrimination.  Though the parties' statements of fact are often confusing, it is clear that the County Defendants' blanket assertion that all of Schmidt's alleged wrongful conduct occurred before Parker called the County Commissioner in July of 2011 is without merit.  To the contrary, the evidence supports the opposite conclusion with the sole exception of Schmidt allegedly vowing to stand by Randall no matter what at the beginning of

the Project.

Some of Parker Excavating's allegations against Schmidt are not supported by admissible evidence. First, Parker Excavating fails to provide a citation in the record for any letter of deficiencies authored by Schmidt, and Schmidt cannot be liable for any letter authored by Randall solely because he was his supervisor. *See Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir. 1996) (there is no concept of strict supervisor liability under § 1983; plaintiff must show deliberate, intentional act by supervisor to violate rights). Second, the only "snide comments" from Schmidt that are not hearsay consist of him saying that he could not believe Parker Excavating was being used for traffic on the Project and that one particular sign placement by Parker Excavating was the dumbest thing he had ever seen. With no direct link to any adverse action taken against Parker Excavating based on these comments or on Schmidt's conduct towards Parker in meetings, I conclude that these actions do not give rise to unlawful interference with Parker Excavating's contract rights under § 1981. *See Sanchez, supra.*

Finally, as with Randall, I conclude that Schmidt's role in requiring the apology letters does not constitute unlawful interference with Parker Excavating's contract rights under § 1981 since there is no evidence to refute the statements in these letters that Parker's actions in contacting the County Commissioner circumvented the proper dispute resolution process under Parker Excavating's subcontract or to show that the letters impacted the parties' performance under it. Again then, I conclude that Parker Excavating has failed to meet its heavy burden of establishing that Schmidt's actions violated Parker Excavating's rights under § 1981.

Though not essential to my analysis that the County Defendants are entitled to qualified immunity on Parker Excavating's claims, I further conclude that even if Parker Excavating's

allegations were sufficient to establish that the County Defendants violated its rights under § 1981, Parker Excavating cannot meet its heavy burden of establishing that these rights were clearly established. Parker Excavating's failure to cite any authority supporting § 1981 liability for government officials under circumstances even remotely similar to this case is not surprising given the limited authority addressing the § 1981 liability of non-parties to the underlying contract. *See Felton v. Polles,* 315 F.3d 470, 480 (5th Cir. 2002), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co.,* 548 U.S. 53 (2006) ("... it is not clear whether a § 1981 claim lies against an individual defendant not a party to the contract giving rise to the claim."); *Hicks v. IBM,* 44 F. Supp.2d 593, 596 ( recognizing that issue of whether fellow employee who is not a party to the employment contract can be liable under § 1981 "has not been clearly resolved and there is no controlling authority in the Second Circuit."). *But see Cimino v. Delaware Dep't of Labor,* 2002 WL 265095 ( D. Del. Feb 25, 2002) at ** 13-4 ("A third party may be liable under Section 1981 ... regardless of whether the employer or anyone else may also be liable.").

While government officials may be on notice that their conduct violates the law in even novel factual circumstances, they must nonetheless have fair warning that their conduct violates the law. *Hope v. Pelzer,* 122 S. Ct. 2508, 2516 (2002). I conclude that the County Defendants, who were neither parties nor representatives of a party to Parker Excavating's subcontract, did not have fair warning that their actions, even if unfair or wrongful, violated Parker Excavating's rights under § 1981.

Because Parker Excavating has failed to meet its heavy burden of demonstrating that the County Defendants violated its clearly established rights under § 1981, its discrimination claim against Randall and its retaliation claims against both County Defendants are barred by the

doctrine of qualified immunity.

## B. The County Defendants' Remaining Arguments

Having concluded that the County Defendants are entitled to qualified immunity, I need not consider the remaining arguments set forth in their summary judgment motion. To the extent these same arguments have been made in other pending summary judgment motions, I will address them as necessary and appropriate in the context of those motions.

## IV.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.   The County Defendants' Motion for Summary Judgment [Doc # 79] is GRANTED;

2.  Parker Excavating's Second Claim for Relief against Randall for discrimination under § 1981 and under § 1981 through § 1983 is DISMISSED WITH PREJUDICE;

3.  Parker Excavating's Third Claim for Relief against the County Defendants for retaliation under § 1981 through § 1983 is DISMISSED WITH PREJUDICE; and

4.  The County Defendants shall be awarded their costs.


Dated: May   3  , 2016 in Denver, Colorado.

                                          BY THE COURT:

                                             s/Lewis T. Babcock
                                          LEWIS T. BABCOCK, JUDGE