**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 18, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

_____

| | |
|---|---|
| PARKER EXCAVATING, INC., a Colorado corporation, | |
| Plaintiff - Appellant, | |
| v. | No. 16-1225 |
| LAFARGE WEST, INC., A Delaware corporation; MARTIN MARIETTA MATERIALS, INC., a North Carolina corporation; FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation; NICK GUERRA, | |
| Defendants - Appellees, | |
| ALF RANDALL, in his individual capacity; ROBERT SCHMIDT, in his individual capacity, | |
| Defendants. | |

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:14-CV-01534-LTB-MJW)**
_____

Jennifer K. Fischer, Fischer & Fischer, P.C., Denver, Colorado, appearing for Plaintiff-Appellant.

William T. O'Connell, III (Larry S. McClung and Rachel Ollar Entrican, with him on the brief), Wells, Anderson & Race, LLC, Denver, Colorado, appearing for Appellees LaFarge West, Inc. and Fidelity and Deposit Company of Maryland.

Van Aaron Hughes (Jonathan G. Pray and Hannah M. Caplan, with him on the brief), Brownstein Hyatt Farber Schreck, LLP, Denver, Colorado, appearing for Appellees Martin Marietta Materials, Inc. and Nick Guerra.

—————————————————————

Before **HARTZ**, **MATHESON**, and **PHILLIPS**, Circuit Judges.

—————————————————————

**MATHESON**, Circuit Judge.

—————————————————————

This appeal arises from a grant of summary judgment against Plaintiff-Appellant Parker Excavating, Inc. ("PEI") on its civil rights claim against Defendants-Appellees Lafarge West, Inc. ("Lafarge"),[1] Martin Marietta Minerals, Inc. ("MMM"), and Nick Guerra, an employee of Lafarge and MMM.

Lafarge, a construction company, was the primary contractor on a paving project for Pueblo County, Colorado ("the County"). PEI, a Native American-owned construction company, was a subcontractor for Lafarge. MMM replaced Lafarge as the primary contractor. PEI's participation in the project was terminated before it entered into a new subcontract with MMM.

PEI alleged Lafarge retaliated against it with a letter of reprimand and a demand to sign letters of apology after PEI Vice President Greg Parker complained that County employees discriminated against PEI on the basis of its Native American ownership. PEI alleged Lafarge, MMM, and Mr. Guerra retaliated against it when it

---

[1] Fidelity & Deposit Insurance Company ("Fidelity"), Lafarge's surety, is also listed as an Appellee. We do not consider Fidelity a proper party on appeal. The only claim on appeal, a 42 U.S.C. § 1981 claim, was not alleged against Fidelity. The district court declined to exercise supplemental jurisdiction over the only claim that was raised against Fidelity.

was asked to vacate the project after Mr. Parker made further complaints of discrimination.  PEI based the foregoing on 42 U.S.C. § 1981, which prohibits racial discrimination in contracts and retaliation for opposing such discrimination, 42 U.S.C. § 1981, *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445-46 (2008).

In separate orders, the district court granted summary judgment on PEI's § 1981 retaliation claim to (1) MMM and Mr. Guerra because PEI could not show its opposition to County employees' discrimination was "protected" opposition under § 1981 and (2) Lafarge because PEI could not show Lafarge took an adverse action against it.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the grant of summary judgment to MMM and Mr. Guerra and reverse the grant of summary judgment to Lafarge.

In their summary judgment motion, MMM and Mr. Guerra argued that PEI could not base its § 1981 retaliation claim on its opposition to the alleged discriminatory conduct of third-party County employees.  PEI failed to respond to this argument in district court and also has failed to argue on appeal that the district court plainly erred in granting summary judgment on this ground.  Under these circumstances, we affirm as to MMM and Mr. Guerra.

In its summary judgment motion, Lafarge argued PEI could not show Lafarge took an adverse action against it.  The district court agreed and granted summary judgment on this ground.  On appeal, PEI argues there is a genuine issue of material

fact on this question.  We agree and reverse the grant of summary judgment on the § 1981 retaliation claim as to Lafarge.

## I.  **BACKGROUND**

### A.  *Factual Background*

We present the following facts in the light most favorable to PEI, the non-moving party on summary judgment.  *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011).

PEI is associated with the Choctaw Tribe.  Mr. Parker is PEI's Vice President. Mr. Guerra was Lafarge's estimator and project manager, and then worked for MMM.

In July 2011, the County hired Lafarge to be the primary contractor on a roadway and drainage improvement project on South McCulloch Blvd. ("the McCulloch Project").  Lafarge subcontracted with PEI for excavation and traffic control work.

Two provisions of the subcontract are especially relevant.  First, in lieu of PEI's providing a performance bond, Lafarge agreed that it would retain 50 percent of the funds owed to PEI until PEI completed its work.  Second, the arbitration clause required that "[a]ny claim or dispute arising out of this Subcontract . . . be subject to and determined by binding arbitration . . . ."  App., Vol. IV at 27.

We present the remaining facts to correspond with the elements of PEI's § 1981 retaliation claim:  (1) the County employees' alleged discriminatory conduct;

(2) PEI's alleged opposition to that discriminatory conduct; and (3) the Appellees'

alleged retaliation for that opposition.

1. **Alleged Discrimination, Opposition, and Retaliation – June to July 2011**

    a. *Alleged discriminatory conduct*

PEI contends Mr. Parker was the target of discriminatory conduct during a pre-

construction meeting on June 28, 2011, attended by County representatives, Lafarge

employees, and other contractors on the McCulloch Project.  In that meeting, County

employee Alf Randall wadded up PEI's proposed traffic control diagrams and threw

them in the trash, calling them "bullshit."  App., Vol. V at 130.  PEI alleges Mr.

Randall acted out of discriminatory animus toward PEI based on a comment he had

made during a previous, unrelated construction project (the "William White

Project").[2]  During a payment dispute on that project, Mr. Randall allegedly told Mr.

Parker that he believed "affirmative action was bullshit."  *Id.* at 90.

2. **Alleged opposition to discrimination**

On July 12, 2011, at Mr. Guerra's suggestion, Mr. Parker called County

Commissioner John Cordova to complain about Mr. Randall's actions during the pre-

construction meeting.  Mr. Parker spoke with the Commissioner over a speakerphone

in Mr. Guerra's presence.

During the phone call, Mr. Parker said Mr. Randall's behavior was due to

PEI's Native American ownership, citing Mr. Randall's comment during the William

White Project about affirmative action.

---

[2] The date of Mr. Randall's comment is unclear.

3.  **Alleged retaliatory acts**

On July 13, 2011—the day after the phone call to the Commissioner—Mr. Guerra sent Mr. Parker a letter of reprimand on behalf of Lafarge.  The letter stated Lafarge had been informed that Mr. Parker had "contacted various public officials" to discuss the incident between Mr. Parker and Mr. Randall.  App., Vol. V at 154.  The letter explained that, in doing so, Mr. Parker had "circumvented the proper dispute resolution process as outlined in [the] subcontract agreement with Lafarge and [had] put Lafarge at risk of being disqualified as General Contractor on the McCulloch . . . project."  *Id.*[3]  The letter stated it was PEI's "first and final notice to follow the proper procedure for dispute resolution" and that PEI's subcontract would be terminated if Mr. Parker contacted any County official regarding any dispute on the McCulloch Project moving forward.  *Id.*

Mr. Guerra further required Mr. Parker to sign letters to Mr. Randall and Robert Schmidt, another County employee, apologizing for "circumventing the proper procedure for dispute resolution" for disputes between Mr. Parker and Mr. Randall on the McCulloch Project.  *Id.* at 155, 156.

---

[3] The letter does not make clear what provision of the subcontract outlined the proper dispute resolution process, but it appears to be the arbitration provision discussed above.

- 6 -

1. **Alleged Discrimination, Opposition, and Retaliation – November to December 2011**

   a. *Alleged discriminatory conduct*

   In addition to the June 28, 2011 incident of alleged discrimination, PEI identifies three other allegedly discriminatory acts.

   <u>First</u>, in October or November 2011, Mr. Schmidt confronted Mr. Parker and called him a "f***ing liar" for not conducting proper inspections at the work site.  *Id.* at 129.

   <u>Second</u>, in another meeting, Mr. Schmidt called Mr. Parker "stupid" and a "dumbass," and poked him in the chest three times.  *Id.*

   <u>Third</u>, Mr. Randall made unreasonable, unjustified demands on PEI, including requiring PEI to change or move construction signs without good cause.

   b. *Alleged opposition to discrimination*

   Along with Mr. Parker's phone call to Commissioner Cordova in July 2011, PEI alleges it opposed discrimination on two other occasions.

   <u>First</u>, on November 3, 2011, Mr. Parker wrote a letter to Mr. Guerra complaining about "perceived discrimination" committed by the County during the McCulloch Project.  *Id.* at 179.  Mr. Parker explained how the County made unjustified demands of PEI during the project that "seem[ed] to indicate a disregard for [PEI], if not a direct attempt to keep PEI from performing well on the project."  *Id.* at 180.  Mr. Parker faulted the County and did not "hold Lafarge responsible for the actions taken against PEI thus far."  *Id.* at 181.

Second, on December 7, 2011, Mr. Parker wrote a letter to Mr. Randall in response to a letter from the County documenting PEI's deficiencies on the project.[4] The letter provided justifications for each of PEI's purported deficiencies. It also stated that "[t]he discrimination shown by Pueblo County towards PEI"—including the County's complaints about the traffic control plans and its constant demands for changes to the plans—was "unwarranted." App., Vol. III at 161. The letter also referenced Mr. Schmidt's "belligerent" statements during a November 22, 2011 meeting. *Id.* at 162.

## 2. **Alleged retaliatory acts**

PEI alleges a series of retaliatory acts between December 12 and December 16, 2011, that were prompted by a December 12 letter from Mr. Randall to Mr. Guerra. In that letter, Mr. Randall wrote:

> This letter is a follow-up to my letter of December 6, 2011 relative to deficiencies in the traffic control on the above project. The reaction to that letter by your traffic control subcontractor, specifically Mr. Greg Parker, was to: a) refuse to make certain changes, b) state that any further conversations with the County relative to traffic control would only happen with his attorney present, c) accuse my staff of discrimination against him, and d) become verbally abusive and generally belligerent towards members of my staff. This conduct is not acceptable for contractors performing work on projects for Pueblo County, nor for their subcontractors. Please take whatever steps you deem appropriate to assure that this conduct does not continue.

App., Vol. IV at 84.

---

[4] Mr. Parker hand delivered the letter to Mr. Guerra and directed him to give it to Mr. Randall.

On December 12, 2011, the same day as Mr. Randall's letter, Mr. Guerra wrote Mr. Parker a letter stating that MMM had taken over for Lafarge as the County's contractor for the McCulloch Project.  It said that MMM would require a new subcontract with PEI and that, unlike Lafarge, MMM would require a bond.  It also explained that, due to Mr. Parker's earlier statement that PEI could not post a bond, MMM requested that PEI vacate the project.  The letter was on MMM letterhead, but Mr. Guerra signed it as a Lafarge employee.  It showed that copies were sent to four Lafarge managers.

On December 15, 2011, Mr. Guerra wrote Mr. Parker another letter reiterating the points in his December 12 letter.  Mr. Guerra signed it as an MMM employee.  It showed that copies were sent to three of the same managers who were listed in his December 12 letter, this time identified as managers of MMM rather than Lafarge.

On December 16, 2011, Mr. Guerra sent a third letter requesting that PEI vacate the project.

## B. *Procedural Background*

On May 30, 2014, PEI sued Lafarge, Fidelity, MMM, Mr. Guerra, Mr. Randall, and Mr. Schmidt in the United States District Court for the District of Colorado.  PEI's first amended complaint, the operative one here, alleged a retaliation claim under 42 U.S.C. § 1981 against Lafarge, MMM, Mr. Guerra, Mr. Randall, and Mr. Schmidt.  It further alleged a discrimination claim under 42 U.S.C.

§ 1983 against Mr. Randall, a retaliation claim under § 1983 against Mr. Randall and

Mr. Schmidt, and various state contract claims against Lafarge, MMM, and Fidelity.[5]

Three motions for summary judgment were filed by (1) MMM and Mr. Guerra,

(2) Lafarge and Fidelity, and (3) Mr. Randall and Mr. Schmidt.  Each motion

requested summary judgment on PEI's § 1981 retaliation claim.  In their motion, Mr.

Randall and Mr. Schmidt also asked for summary judgment on the § 1983 retaliation

and discrimination claims against them.  PEI responded to all three motions in

consolidated briefing.

The district court entered three orders on the respective summary judgment

motions, granting summary judgment on the § 1981 retaliation claim for (1) MMM

and Mr. Guerra, (2) Lafarge, and (3) Mr. Randall and Mr. Schmidt.  The court also

granted summary judgment in favor of Mr. Randall and Mr. Schmidt on the § 1983

claims against them based on qualified immunity.  The court declined to exercise

supplemental jurisdiction over the remaining state law claims.  After the court

entered final judgment against PEI on the § 1981 retaliation claim, this appeal

followed.

This appeal concerns only the first two orders because Mr. Randall and Mr.

Schmidt have since been dismissed from the case.

---

[5] PEI originally filed the state law claims in state court but requested they be
dismissed and then refiled them in the federal action.

1. **First Summary Judgment Order**

When MMM and Mr. Guerra moved for summary judgment on the § 1981 claim, they argued they were not proper defendants because PEI's claim concerned retaliation for PEI's opposition to the alleged discriminatory conduct of third-party County employees, not the conduct of MMM or Mr. Guerra. The district court agreed, noting PEI had not cited any authority to contradict the defendants' argument. It therefore granted summary judgment in favor of MMM and Mr. Guerra.

2. **Second Summary Judgment Order**

Lafarge moved for summary judgment on the § 1981 retaliation claim, but on the different ground that it had not taken any adverse action against PEI. Lafarge argued its involvement on the project had ended on December 11, 2011, when MMM had taken over for Lafarge on the project, and PEI was not terminated until December 17, 2011. The parties also disputed in district court whether Lafarge was responsible for taking other adverse actions against PEI. The district court granted summary judgment in favor of Lafarge. It ruled that MMM, not Lafarge, was responsible for PEI's termination, and that Lafarge was not responsible for any other adverse actions.

## II. DISCUSSION

We review whether the district court properly granted summary judgment on PEI's § 1981 retaliation claim for (1) MMM and Mr. Guerra and (2) Lafarge.

We affirm the grant of summary judgment on the § 1981 retaliation claim as to MMM and Mr. Guerra because PEI forfeited its argument that its opposition to the

County's third-party discriminatory conduct qualifies as protected opposition for its § 1981 retaliation claim, and has not argued the district court plainly erred when it granted summary judgment on this ground.

We reverse the grant of summary judgment on the § 1981 retaliation claim as to Lafarge because the district court erred in holding PEI could not show Lafarge took adverse actions against it.

### A. *Standard of Review*

"We review a district court's grant of summary judgment de novo, applying the same legal standard as the district court." *Twigg*, 659 F.3d at 997. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Twigg*, 659 F.3d at 997.

### B. *Legal Standards*

PEI's claim is based on a provision from the Civil Rights Act of 1866. Under 42 U.S.C. § 1981(a),

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The statute "prohibits not only racial discrimination but also retaliation against those who oppose it." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2529 (2013) (citing *CBOCS*, 553 U.S. at 445).

A corporation can be a § 1981 plaintiff when it has "acquired a racial identity, either as a matter of law or by imputation . . . ." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1059 (9th Cir. 2004); *see also Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1265 (10th Cir. 2013) (providing that an independent contracting company could bring a claim under § 1981).

When courts consider § 1981 retaliation claims, "the principles set forth in Title VII retaliation cases apply with equal force . . . ." *Twigg*, 659 F.3d at 998.  As with a Title VII retaliation claim, "a plaintiff bringing a § 1981 retaliation claim must establish that retaliation played a part in the employment decision . . . ." *Id.* (quotations omitted).  This can be done in two ways.  *Id.*  First, a plaintiff can show that retaliatory animus played a "motivating part" in the employment decision.  *Id.* (quotations omitted).  Second, a plaintiff can rely on the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to prove retaliation indirectly.  *Id*.

On appeal, PEI relies only on the *McDonnell Douglas* framework.  Under this framework, the plaintiff must make out a prima facie case of retaliation by showing that:  (1) it engaged in opposition to racial discrimination that is protected under the statute; (2) a reasonable person would have found the challenged action materially adverse; and (3) a causal connection existed between the protected activity and the

adverse action. *Id.* The burden then shifts to the alleged retaliator to offer a legitimate, nonretaliatory reason for its conduct. *Id.* If the employer satisfies this burden, the plaintiff must show the employer's reason was merely a pretext for retaliation. *Id.*

PEI's appeal of the first summary judgment order as to MMM and Mr. Guerra concerns the first element of the prima facie case, specifically whether PEI engaged in "protected opposition." Were PEI's complaints about the alleged discrimination of County employees Mr. Randall and Mr. Schmidt "protected opposition" for purposes of a retaliation claim under § 1981?

PEI's appeal of the second summary judgment order as to Lafarge relates to the second element of the prima facie case. Is there a triable issue of fact that Lafarge terminated PEI?

## C. *Analysis*

We address the grant of summary judgment on the § 1981 retaliation claim first as to MMM and Mr. Guerra, and then as to Lafarge.

### 1. **First Summary Judgment Order (MMM and Mr. Guerra)**

We affirm the grant of summary judgment on the § 1981 retaliation claim for MMM and Mr. Guerra because PEI has forfeited any argument that its opposition to third-party discriminatory conduct of County employees Mr. Randall and Mr. Schmidt qualifies as "protected opposition" capable of supporting a retaliation claim against MMM and Mr. Guerra under § 1981.

PEI's amended complaint alleged MMM and Mr. Guerra violated § 1981 by retaliating against it for opposing discriminatory conduct of the third-party County employees.  MMM and Mr. Guerra's summary judgment motion argued that PEI could not satisfy the first prima facie element because the claim was based on PEI's opposition to discriminatory conduct of third parties—County employees Mr. Randall and Mr. Schmidt.  PEI did not respond to this argument in its consolidated briefing opposing summary judgment.  The district court granted summary judgment on the ground that MMM and Mr. Guerra could not be liable for retaliation that was based on PEI's opposition to the County employees' alleged discriminatory conduct.

On appeal, PEI attempts to argue it can satisfy the first element of its prima facie case because its opposition to the County employees' alleged discrimination amounts to "protected opposition" under § 1981.  Because it failed to present any such argument to the district court, it cannot obtain relief on appeal unless it shows the district court plainly erred in granting summary judgment.  PEI has not attempted to do so, and its appeal as to MMM and Mr. Guerra therefore fails.

a.  *Forfeiture and plain error*

When a plaintiff raises a legal theory on appeal that was not raised in district court, we consider that theory forfeited.  *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011).  An appellant's failure to argue for plain error on appeal "marks the end of the road for an argument for reversal not first presented to the district court."  *Id.* at 1131.  "To show plain error, a party must establish the presence of (1) error, (2) that is

plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1128.

    b.  *PEI's opposition to third-party conduct*

On appeal, PEI points to three instances of opposition to discrimination it asserts were "protected" under § 1981:  (1) Mr. Parker's July 12, 2011 call to County Commissioner Cordova; (2) his November 3, 2011 letter to Mr. Guerra, and (3) his December 7, 2011 letter to Mr. Randall.[6]  PEI acknowledges that all three were responses to acts of "third party" County employees.  *See* Aplt. Br. at 2 (presenting as an issue on appeal whether the "conduct of a third-party" could serve as the basis for its § 1981 retaliation claim); *see also* Oral Arg. at 5:38-43 (conceding County employees were third parties).

    c.  *The parties' district court arguments and the district court's order*

In their summary judgment motion, MMM and Mr. Guerra argued that PEI's alleged opposition to the third-party County employees' discrimination was not "protected" under § 1981 and thus could not satisfy the first element of a prima facie retaliation claim.  *See* App., Vol. I at 194-95.  They argued, citing cases, that "[f]ederal courts have consistently rejected retaliation claims based on a complaint of a third party's alleged discrimination where the plaintiff makes no affirmative showing of the defendant's own discriminatory intent or that the defendant had any

---

[6] MMM and Mr. Guerra do not contest that these actions put them on notice of PEI's opposition to alleged discrimination.  *See Petersen v. Utah Dep't of Corr.*, 302 F.3d 1182, 1187 (10th Cir. 2002) (providing that a retaliation claim requires the defendant to be on notice the plaintiff was engaging in protected opposition).

duty or authority to prevent the discriminatory conduct of the third party." *Id.* at 194. We refer to this as MMM and Mr. Guerra's "third-party argument."

PEI failed to respond to this argument in district court. Although PEI asserted that it engaged in "protected activity," it provided no legal argument or authority to show why Mr. Parker's conduct qualified as protected opposition under § 1981. *See* App., Vol. 1 at 265, 279; Vol. II at 6, 17, 21, 25. Indeed, in its 67 pages of responsive briefing in district court, PEI never argued it could satisfy the first element of its prima facie case by opposing third-party discrimination, despite acknowledging that "[t]he Defendants" (referring to all the Defendants collectively, and not just MMM and Mr. Guerra), had argued PEI could not show it engaged in protected activity. App., Vol. II at 9.

In its first summary judgment order, the district court noted PEI had failed to cite any authority to contradict MMM and Mr. Guerra's third-party argument that it had not engaged in protected opposition. *See* App., Vol. II at 110. Analogizing to Title VII, which "focus[es] . . . on whether the employee opposed an unlawful employment practice by the employer[,]" the court concluded that PEI must oppose discriminatory conduct of MMM and Mr. Guerra—not of third-party County employees over whom the defendants had no authority or control—to succeed in its § 1981 retaliation claim. *Id.* at 110-11.

d. *PEI's argument on appeal*

For the first time on appeal, PEI attempts to argue why its opposition to the County employees' alleged discrimination was "protected" for purposes of its § 1981

claim.  Attempting to draw from the Title VII context, it argues that the County employees' third-party discriminatory conduct can be imputed to MMM and Mr. Guerra, which we call PEI's "imputation argument."  Aplt. Br. at 29-31 (MMM); Aplt. Br. at 57 (incorporating its arguments against MMM as to Mr. Guerra).  PEI's contention is that MMM and Mr. Guerra "carried out the discriminatory preference of the [County]—the third party that committed the alleged discriminatory acts—and therefore is liable for retaliation."  *Id.* at 30.  This argument is PEI's sole argument on appeal to respond to MMM and Mr. Guerra's third-party argument.[7]

e.  *Forfeiture and plain error*

MMM and Mr. Guerra argue that PEI forfeited its imputation argument by failing to raise it first in district court.  We agree.  Further, PEI has failed to argue the district court's decision to accept MMM and Mr. Guerra's third-party argument was plain error.  Without a showing of plain error, we will not reverse the grant of summary judgment.  *See Richison*, 634 F.3d at 1131.[8]

---

[7] For example, PEI did not argue the statutory language of § 1981 supported its third-party theory and did not challenge that the County employees were actually third parties.

[8] When asked at oral argument to cite the best Tenth Circuit case supporting PEI's imputation argument, PEI's counsel responded, "There is no Tenth Circuit case.  It is a case of first impression in this circuit."  Oral Arg. at 8:25-31.  Thus, by PEI's own admission, it would have faced long odds arguing that an error here was "plain."  *See United States v. Turrietta*, 696 F.3d 972, 981 (10th Cir. 2012) ("[W]here the law is unsettled, a matter of first impression will generally preclude a finding of plain error.").

f. *PEI's arguments against forfeiture*

Rather than argue for plain error, PEI contends it did not forfeit its imputation

argument because, to preserve the issue, it needed only to allege its retaliation claim in

district court and then could present any supportive legal theory for the first time on

appeal.  PEI relies on the Supreme Court's statement that "[o]nce a federal claim is

properly presented, a party can make any argument in support of that claim; parties are

not limited to the precise arguments they made below."  Aplt. Reply Br. at 12 (quoting

*Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)).

PEI's reliance on *Yee* is misplaced.  The quote from *Yee* was made in the context

of deciding whether the Court would consider an argument outside the scope of the grant

of certiorari.  *See Yee*, 503 U.S. at 534-38.  The statement had nothing to do with an

appellant's raising arguments on appeal to a circuit court that were not first raised in

district court.  *See Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522,

529 (6th Cir. 2014) (distinguishing *Yee* as based on "prudential limitations applicable to

the Supreme Court's certiorari jurisdiction" and "not alter[ing] [the court's] well-settled

rule that 'this court declines to entertain arguments not presented in the first instance to

the district court'").  PEI's extension of *Yee* would conflict with our "long-standing

practice" of reviewing newly raised legal arguments only under the plain-error standard.

*Richison*, 634 F.3d at 1128.

PEI's specific argument that it did not forfeit its imputation argument finds no

legal support.  It cannot rely on the mere fact that it alleged a § 1981 claim to justify

making new arguments on appeal.  The complaint's allegations cannot substitute for

responding to MMM and Mr. Guerra's argument in their summary judgment motion. Although a movant bears the burden to show summary judgment is appropriate, "[t]he nonmovant also must demonstrate a plausible ground for his claim or defense," including a viable legal theory that would entitle the nonmovant to relief.  10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2727.2 (4th ed. 2017); *see also Windon Third Oil & Gas P'ship v. FDIC*, 805 F.2d 342, 346 (10th Cir. 1986) (providing that a genuine issue of fact to survive summary judgment "must be predicated on a viable legal theory" (quotations omitted)), *overruled on other grounds by Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996); *Dorris v. Absher*, 179 F.3d 420, 426 (6th Cir. 1999) (providing summary judgment is appropriate when the plaintiffs had not presented "a viable legal theory under which liability [could] attach to [the defendant]").  MMM and Mr. Guerra put PEI on notice that it needed to present such a legal theory to survive summary judgment, and PEI did not do so.

g.  Richison *supports forfeiture*

PEI's forfeited argument here is analogous to the one in *Richison*.  In *Richison*, the defendants had moved for summary judgment, arguing that the plaintiff's claims were time-barred based on the undisputed facts.  634 F.3d at 1126.  "On notice and in the face of [the defendants'] challenge," the plaintiff argued only that the facts were in dispute, and "[a]t no point" introduced his legal theory that his claims were not time-barred.  *Id.* at 1127.  The district court agreed with the defendants and granted summary judgment.  *Id.*  On appeal, the plaintiff argued for the first time that the claims were not time-barred.  *Id.*  We declined to reverse on this basis because the

plaintiff forfeited his time-bar argument by failing to raise it in district court and failing to show plain error on appeal. *Id.* at 1128, 1130-31.

Like the defendants' challenge to the timeliness of the claims in *Richison*, MMM and Mr. Guerra put PEI on notice of their challenge that PEI could not rely on opposition to third-party discrimination to support its § 1981 retaliation claim against them. And, like the plaintiff in *Richison*, PEI failed to respond to this challenge in district court with the legal argument it now presents on appeal. Thus, as in *Richison*, we do not address PEI's imputation argument raised for the first time on appeal in the absence of an argument that the district court plainly erred.

*   *   *   *

In sum, because PEI had an opportunity to present its imputation argument as a response to MMM and Mr. Guerra's third-party argument in district court but failed to do so, it forfeited the only argument it has presented on appeal that it engaged in "protected opposition" under § 1981. And because it did not argue the district court plainly erred in granting summary judgment, we affirm as to MMM and Mr. Guerra.

2. **Second Summary Judgment Order (Lafarge)**

Lafarge asks us to affirm the district court's ruling that PEI did not show Lafarge took adverse action against PEI. Alternatively, Lafarge asks us to affirm on the grounds that: (1) PEI admitted at a deposition that Lafarge did not retaliate against PEI; (2) PEI cannot show a causal relationship between PEI's alleged protected opposition and any alleged adverse action; and (3) PEI has failed to present evidence showing Lafarge's reasons for any adverse actions were pretextual. Lafarge

does not argue we should affirm based on MMM and Mr. Guerra's third-party argument.[9]

We reverse the grant of summary judgment to Lafarge on PEI's § 1981 retaliation claim because the district court erred in holding PEI could not show Lafarge had not taken adverse action against it.

a. *Legal principles on adverse action for retaliation claims*

To show an adverse action for a retaliation claim under § 1981, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotations omitted) (Title VII retaliation); *Twigg*, 659 F.3d at 998 (providing "the principles set forth in Title VII retaliation cases apply with equal force" to § 1981 retaliation claims). The action must be materially adverse "to separate significant from trivial harms[,]" such as "petty slights, minor annoyances, and simple lack of good manners . . . ." *Id.*

b. *Analysis*

PEI argues Lafarge was responsible for its termination in December 2011.[10] We must resolve whether there is a triable issue of fact that Lafarge is responsible for PEI's termination.

---

[9] For this reason, and because Lafarge did not present a third-party argument in its motion for summary judgment and the district court did not grant summary judgment as to Lafarge on that ground, we do not affirm as to Lafarge based on PEI's forfeiture of its response to MMM and Mr. Guerra's third-party argument.

The court erred in ruling there was no genuine issue of fact as to whether Lafarge played a role in terminating PEI.[11]  The letter asking PEI to vacate the project sent on December 12, 2011, identifies Mr. Guerra as a Lafarge employee and copies three Lafarge managers.  App., Vol. V at 251.  Lafarge points out that the letter was written on MMM letterhead and references MMM's—rather than Lafarge's—bonding requirement.  But Mr. Guerra signed the letter as a Lafarge employee and copied it to Lafarge managers, which creates a genuine issue of fact as to whether Lafarge played a role in terminating PEI and thus took adverse action against it.  The court erred in holding otherwise.[12]

---

[10] In district court, PEI pointed to other alleged adverse actions, but the court ruled they did not qualify as adverse actions.  PEI does not challenge these rulings, so we do not address them.

[11] The court stated that PEI did not "specifically list[]" PEI's termination by Lafarge in its response.  That is incorrect, as PEI's response argued Lafarge was responsible for its termination.

[12] PEI also argues that Lafarge took adverse action against it in July 2011 by sending PEI a reprimand letter stating it would be terminated if PEI circumvented the proper dispute resolution process again and by requiring PEI to send letters of apology to Mr. Randall and Mr. Schmidt.  The court ruled that the "letters of apology" did not qualify as adverse action, App., Vol. 2 at 124, but did not address whether Lafarge's "letter of reprimand" qualified, despite PEI's identifying the letter as evidence of retaliation in its opposition to summary judgment.  It is not clear whether the court intended its ruling on the letters of apology to encompass the letter of reprimand, an issue that we leave for consideration on remand.  *See Burlington N.*, 548 U.S. at 64 (holding that adverse actions for retaliation claims are those that would "dissuad[e] a reasonable worker from making or supporting a charge of discrimination"); *Couch v. Bd. of Trs. of Mem'l Hosp.*, 587 F.3d 1223, 1237 (10th Cir. 2009) (discussing how *Burlington Northern* broadened the scope of adverse actions for retaliation claims).

We therefore reverse because the court erred in holding PEI could not show Lafarge took adverse action against it to state a prima facie case of retaliation under § 1981.[13]

## III.  CONCLUSION

We affirm the grant of summary judgment on PEI's § 1981 claim against MMM and Mr. Guerra because PEI forfeited its argument that its opposition to discrimination by opposing third-party conduct is "protected opposition" under § 1981.  We reverse the grant of summary judgment on PEI's § 1981 claim against Lafarge because PEI has shown a genuine issue of material fact as to whether Lafarge took adverse action against it.

---

[13] We decline to reach any potential alternative grounds to affirm not ruled on by the district court.  *See Smith v. Rockett*, 522 F.3d 1080, 1082 (10th Cir. 2008) ("Because the district court did not address any of the alternative grounds for dismissal asserted by Defendants, we decline to address those issues for the first time on appeal, leaving them for the district court to consider on remand."); *Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1290 (10th Cir. 2011), *as amended on reh'g in part* (Dec. 23, 2011) (declining to address an issue not ruled on below, noting "The better practice on issues raised below but not ruled on by the district court is to leave the matter to the district court in the first instance" (brackets omitted)).

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
## OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker                  July 18, 2017                  Chris Wolpert
Clerk of Court                                                   Chief Deputy Clerk

Ms. Jennifer Kroell Fischer
Fischer & Fischer
1777 South Harrison Street
Suite 1500
Denver, CO 80210

Mr. Jerome R. Geraghty
Ms. Lisa C. Secor
Schlueter, Mahoney & Ross, PC
999 18th St.
#3200
Denver, CO 80202-0000

RE:   **16-1225, Parker Excavating v. LaFarge West, et al**
      Dist/Ag docket: 1:14-CV-01534-LTB-MJW

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40, any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

cc:      Kathryn Anne Barrett
         Hannah M Caplan
         V. Aaron Hughes
         Larry S. McClung
         Adam P. O'Brien
         William Thomas O'Connell III
         Jonathan George Pray

EAS/dd